UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHAUNCEY L. RANSOM, | ) | CASE NO. 1:13cr405-02 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Petitioner Chauncey Ransom ("petitioner" or "Ransom") has moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 103 ["2255 Mot."]). The government opposes the motion (Doc. No. 108 ["Gov. Opp'n"]) and has filed a supplement to its opposition (Doc. No. 109 ["Gov. Suppl."], and petitioner has filed a reply (Doc. No. 110 ["Reply"]). On July 14, 2015, in accordance with *Campbell v. United States*, 686 F.3d 353 (6th Cir. 2012), the Court conducted an evidentiary hearing on the motion. At the conclusion of the hearing, the Court announced its decision on the record to DENY petitioner's § 2255 motion. This Memorandum Opinion shall memorialize that ruling.

I. FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2014, petitioner entered a counseled plea of guilty to one count of conspiracy to traffic Oxycodone, in violation of 21 U.S.C. § 846 and 21 U.S.C.

1

§§ 841(a)(1) and (b)(1)(C), and one count of use of U.S. Mail to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b). At the time of his plea, and pursuant to a negotiated plea agreement, the remaining counts against petitioner in the superseding indictment were dismissed by the government. (*See* Doc. No. 81 ["Plea Agreement"].)

As part of the plea agreement, petitioner reserved the right to argue, at sentencing, against the application of a role enhancement under the sentencing guidelines, and further reserved the right to challenge, on appeal, any determination by the sentencing court that petitioner was a career offender. (Doc. No. 70 ["Guilty Plea Hearing TR"] at 301[1]; Plea Agreement at 484.) The agreement did not preserve the right to challenge any role enhancement on appeal, and, in fact, contained an expansive waiver provision that waived most appellate rights. At the time he entered his guilty plea, petitioner indicated that he understood the appellate rights he was voluntarily relinquishing. (Guilty Plea Hearing TR at 308-10.)

On April 15, 2014, the undersigned conducted petitioner's sentencing hearing. Consistent with the rights reserved in the plea agreement, defense counsel argued against a two-level enhancement, under U.S.S.G. § 3B1.1, for petitioner's role in the drug conspiracy. After consideration of the arguments for and against enhancement, the Court imposed the two-level role enhancement, noting that the facts stipulated to in the plea agreement demonstrated that petitioner was an organizer, manager or leader of the conspiracy. (Doc. No. 106 ["Sentencing Hearing TR"] at 706-07.) The Court did not, however, find petitioner to be a career offender.

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Rather, the Court began with a base offense level was 28, to which a two-level increase was added for petitioner's role in the conspiracy, and a three-level reduction was applied for petitioner's acceptance of responsibility. The Court also applied a two-level downward variance in anticipation of a change in the sentencing guidelines for drug offenses, for a total offense level of 25 (*Id*. at 708.) With a criminal history score of six, to which two points were added because petitioner was under a drug sentence at the time he committed the offenses, his criminal history category was IV. (*Id*. at 708-09.) The advisory guideline range of imprisonment for an offense level of 25 and a criminal history category of IV was 84 to 105 months. Petitioner's 98 month sentence fell in the middle of that range. (Doc. No. 94.)

Petitioner did not take a direct appeal from the judgment of conviction and sentence. Instead, on August 29, 2014, petitioner filed the instant § 2255 motion. In his sole ground for relief, petitioner argues that his trial attorney, Debra Hughes, was ineffective when she purportedly failed to follow his instruction to file an appeal from the Court's judgment. (2255 Mot. at 688-91.) Finding that petitioner's motion created a factual dispute as to whether his trial counsel failed to honor his request to appeal, the Court ordered an evidentiary hearing "on the limited question of whether [petitioner's] trial counsel ignored an instruction from him to file a notice of appeal from this Court's judgment of conviction and sentence." (Doc. No. 111 ["Order on Request for Evidentiary Hearing"] at 760.) The Court further appointed counsel to represent petitioner at the hearing. (*Id*., citing *Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Courts*, 28 U.S.C foll. § 2255.)

3

## II. THE EVIDENTIARY HEARING

Two witnesses testified at the July 14, 2015 evidentiary hearing—attorney Debra Hughes and petitioner. The undersigned presided over the hearing and had the opportunity to closely observe the witnesses as they testified. Attorney Hughes testified that she had served as an attorney in the Federal Public Defender's Office for 25 years, and that petitioner's case was one of the last cases that she handled. She indicated that, from early in her representation of petitioner, she was concerned that petitioner's prior criminal record would cause him to be treated as a career offender at sentencing, and she discussed this with petitioner. It was for this reason that she and defendant negotiated a plea agreement that specifically preserved the right to challenge on appeal any such designation.

Ms. Hughes testified that, during the course of her representation of petitioner, she spoke with him on multiple occasions about his anticipated guilty plea and sentence. It was Ms. Hughes's impression that petitioner fully understood the nature of the waiver in the plea agreement that severely limited his avenues of appeal and the issues he could raise on appeal. She further testified that, immediately after sentencing and while petitioner was still in the courtroom, she asked petitioner if he needed to speak with her, and he responded, "No, I'm cool." According to Ms. Hughes, petitioner never communicated to her a desire to appeal this Court's judgment of conviction and sentence, and he never directed a letter to her attention instructing her to file a notice of appeal on his behalf.

Petitioner also testified at the hearing. He maintained that before sentencing he instructed Ms. Hughes to appeal any sentence that contained a role enhancement or a career offender designation, and that she assured him that "we'll appeal our ass." He suggested that he wrote at least one—and possibly two—follow up letters to counsel inquiring about his appeal. He agreed that, immediately after sentencing, he informed Ms. Hughes that he was "cool" and did not need to speak with her, but insisted that he did so because he believed that the two already shared the understanding that she would file a notice of appeal.

The only exhibit offered at the hearing was a letter, received August 11, 2014, written by petitioner and addressed to Vanessa Malone, the attorney from the Federal Public Defender's Office who replaced Ms. Hughes on petitioner's case when Ms. Hughes retired. (Doc. No. 114-1 ["Gov. Ex. 1"].) In this letter, written almost exactly four months after his sentencing hearing, petitioner informed attorney Malone, "I reviewed my case and I believe Debra [Hughes] and I made an error in not putting in a notice of appeal regarding my case." (*Id*. at 765.) As the basis for his belief, petitioner explained that he and Ms. Hughes should have taken an appeal from this Court's application of the two-level enhancement for his role in the conspiracy. (*Id*.) Nowhere in the correspondence did he state that he instructed Ms. Hughes to file a notice of appeal and she failed to do so.

III. DISCUSSION OF THE EVIDENCE AND RESOLUTION OF PETITIONER'S MOTION

As previously discussed, defendant claims that he received ineffective assistance of counsel because his counsel failed to file an appeal following sentencing. Failure to file an appeal upon a defendant's express request is *per se* ineffective

5

assistance of counsel. *Campbell*, 686 F.3d at 358 (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). The Sixth Circuit has held "even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Id*. at 360. Therefore, if the Court were to determine that petitioner explicitly requested that his trial counsel file a notice of appeal and his attorney failed to do so, he would be entitled to pursue a delayed appeal.

The Court concludes that petitioner did not request that his trial attorney file an appeal. In so ruling, the Court credits Ms. Hughes's testimony that petitioner never instructed her to file a notice of appeal or take an appeal from this Court's judgment. She testified credibly that petitioner understood the nature of his plea waiver, a waiver that implicitly included the waiver of the right to challenge any role enhancement on appeal. Her testimony was also consistent with the record, as a whole, and, in particular, with the terms of the negotiated plea agreement. Her explanation of her representation of petitioner through the sentencing hearing was consistent with a professional and effective approach to representing a criminal defendant who was facing stiff mandatory statutory penalties that could only be avoided through a negotiated plea agreement.

In contrast, the Court does not credit petitioner's testimony. It was clear from his demeanor on the witness stand that petitioner was not testifying in a truthful fashion, but was, instead, offering self-serving statements that were contradicted by the record. His representation that he and Ms. Hughes shared an understanding that he would appeal any role enhancement is inconsistent with the plea agreement that did not reserve

that issue for appeal. Moreover, his suggestion that he wrote a mysterious second letter to counsel—on an unknown date—to discuss an appeal was entirely unconvincing and not supported by the record. As for the letter that was produced at the hearing, the Court finds it telling that petitioner did not complain that Ms. Hughes ignored an instruction from him to file a notice appeal. Rather, it is clear from the letter that petitioner was having second thoughts, four months after his sentencing, about the decision he made with his counsel to forego an appeal.

Having determined that petitioner never requested that his trial counsel file an appeal from his conviction and sentence, the Court finds that petitioner has failed to meet his burden of demonstrating that he received ineffective assistance from his trial counsel. He is, therefore, not entitled to relief in the form of a delayed appeal.

### IV. CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth on the record at the July 14, 2015 evidentiary hearing, petitioner's motion to vacate, set aside or correct his sentence (Doc. No. 103) is DENIED. Further, the Court CERTIFIES pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: July 17, 2015

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**